CASE NOS. 22-5593 & 22-5800

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA                    PLAINTIFF-APPELLEE

V.

EDWARD LEONIDAS LEWIS                    DEFENDANT-APPELLANT

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

---

BRIEF OF THE PLAINTIFF-APPELLEE
UNITED STATES OF AMERICA

---

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

CHARLES P. WISDOM JR.
CHIEF, APPELLATE DIVISION

BY:  LAUREN TANNER BRADLEY
ASSISTANT UNITED STATES ATTORNEY
260 W. VINE STREET, SUITE 300
LEXINGTON, KENTUCKY 40507-1612
(859) 685-4876
Lauren.Bradley@usdoj.gov

COUNSEL FOR PLAINTIFF-APPELLEE

# TABLE OF CONTENTS

Table of Authorities ................................................................................... ii

Statement Regarding Oral Argument ........................................................v

Statement of the Issues............................................................................1

Statement of the Case..............................................................................1

Summary of the Argument........................................................................9

Argument

    I.    Lewis consented to a complete search of his electronic devices and never revoked that consent ...............................................................10

    II.    Alternatively, the district court correctly applied the good faith doctrine ...............................................................................................17

Conclusion ...............................................................................................33

Certificate of Compliance

Certificate of Service

Designation of District Court Documents

# TABLE OF AUTHORITIES

## I. Cases

*Davis v. United States*,
    564 U.S. 229 (2011) ................................................................. 18, 31-32

*Florida v. Harris*,
    568 U.S. 237 (2013) ..................................................................... 17

*Herring v. United States*,
    555 U.S. 135 (2009) ............................................................. 18-19, 32

*Painter v. Robertson*,
    185 F.3d 557 (6th Cir. 1999) ........................................................ 10

*Schneckloth v. Bustamente*,
    412 U.S. 218 (1973) ................................................................... 10

*United States v. Abernathy*,
    843 F.3d 243 (6th Cir. 2016) ........................................................ 20

*United States v. Buckingham*,
    433 F.3d 508 (6th Cir. 2006) ........................................................ 10

*United States v. Carter*,
    378 F. 3d 584 (6th Cir. 2004) ....................................................... 10

*United States v. Chaar*,
    137 F.3d 359 (6th Cir. 1998) ........................................................ 26

*United States v. Christian*,
    925 F.3d 305 (6th Cir. 2019) ........................................................ 18

*United States v. Frazier*,
    423 F.3d 526 (6th Cir. 2005) ........................................................ 26

*United States v. Galaviz*,
    645 F.3d 347 (6th Cir. 2011) ........................................................ 12

*United States v. Garrido-Santana*,
   360 F.3d 565 (6th Cir. 2004) .................................................................14

*United States v. Gatherum*,
   338 F. App'x 271 (4th Cir. 2009) ........................................................29

*United States v. Gilbert*,
   952 F.3d 759 (6th Cir. 2020) .................................................................20

*United States v. Hinojosa*,
   606 F.3d 875 (6th Cir. 2010) .................................................................10

*United States v. Jimenez*,
   446 F. App'x 771 (6th Cir. 2011) ........................................................15

*United States v. Jimenez*,
   No. 1:08-CR-101, 2009 WL 2905933 (E.D. Tenn. Sept. 2, 2009)................ 15-16

*United States v. Laughton*,
   409 F.3d 744 (6th Cir. 2005) .........................................................24, 28

*United States v. Leon*,
   468 U.S. 897 (1984).........................................................18, 23, 27, 31

*United States v. McCoy*,
   905 F.3d 409 (6th Cir. 2018) .................................................................18

*United States v. Mendez*,
   431 F.3d 420 (5th Cir. 2005) .................................................................15

*United States v. Mitchell*,
   82 F.3d 146 (7th Cir. 1996) .................................................................15

*United States v. Novak*,
   814 F. App'x 1009 (6th Cir. 2020) ......................................................18

*United States v. Reed*,
   993 F.3d 441 (6th Cir. 2021) .............................................. 28, 30-31

*United States v. Rodriguez-Suazo*,
  346 F.3d 637 (6th Cir. 2003) ................................................................26

*United States v. Smith*,
  795 F.2d 841 (9th Cir. 1986) ........................................................... 29-30

*United States v. Tagg*,
  886 F.3d 579 (6th Cir. 2018) ........................................................17, 22

*United States v. Tatman*,
  397 F. App'x 152 (6th Cir. 2010) ................................................... 12-13

*United States v. White*,
  874 F.3d 490 (6th Cir. 2017) ........................................... 12, 19-21, 27-28, 30-32

## II.  Statutes

U.S. Const. amend. IV ........................................................................17

Ky. Rev. Stat. 531.300 .................................................................. 29-30

## III.  Other Authorities

4 Wayne R. LaFave, Search and Seizure § 8.1
  (4th ed. 2004 & Supp. 2008-09) ........................................................16

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not request oral argument.

## STATEMENT OF THE ISSUES

I.     Whether Lewis's motion to suppress should have been denied because he consented to a complete search of his laptop and cell phone.

II.     Whether the district court acted within its discretion to deny Lewis's motion to suppress based on the good faith exception.

## STATEMENT OF THE CASE

On February 25, 2021, Kentucky State Police (KSP) Detective W. Anthony Gatson and United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI) Special Agents Brian Minnick and Brandon Even went to the home of Edward Leonidas Lewis, who had been identified by HSI as a person-of-interest in a child exploitation investigation. [R. 35: W. Anthony Gatson, TR (Motion Hearing) at 206-09.] Specifically, HSI received a lead that an Internet Protocol (IP) address accessed a website known to host child sex exploitative media. [*Id.* at 206-07.] KSP subpoenaed the internet service provider, and the return yielded two addresses belonging to Lewis—a billing address located in Frankfort and the service address at 147 Meredith Avenue. [*Id.* at 208, 236; R. 60: Presentence Report at ¶ 9.] Detective Gatson, accompanied by Special Agents Minnick and Even, conducted a knock-and-talk at both addresses. [R. 35: W. Anthony Gatson, TR (Motion

Hearing) at 208-09.]  At the first address, a young woman answered the door and

informed them that Lewis did not live there.  [*Id.* at 208.]

Detective Gatson and Special Agents Minnick and Even proceeded to the

second address, 147 Meredith Avenue, where Lewis answered the door.  [*Id.* at

209.]  Detective Gatson told Lewis that they were investigating allegations of child

sex exploitation, and that a federal investigation identified his IP address as being

of interest.  [*Id.* at 209, 211.]  Lewis "invited" the officers in, "said that [it] would

be fine [to search his devices]," and he "signed a consent to search," [*id.* at 209],

which stated as follows:

> I hereby consent to a complete search of the premises, property or
> vehicle located at 147 Meredith Ave Frankfort KY 40601 and more
> particularly described as Samsung Galaxy Note 9 HP Pavilion Laptop
> Model # 3165NGW S/N 5CD6223SP.
>
> I grant this consent to Det. W.A. Gatson known to me to be
> a Kentucky State Police officer, and to such other officers as he deems
> necessary to assist.  I know that I have a right to refuse consent, and I
> voluntarily give up that right.  I know that the officer does not have
> a search warrant.  I have not been threatened or coerced in any way,
> nor have I been promised any favor or benefit.  I have read this
> consent form, or it has been read to me, and I understand it.

[R. 26:  Response at 141.]

Detective Gatson then called Forensic Examiner (FE) Jason Rollins, who

arrived approximately 20 minutes later to aid in the search of the devices.  [R. 35:

W. Anthony Gatson, TR (Motion Hearing) at 209, 213.]  During the search of

2

Lewis's cell phone, Detective Gatson observed thumbnails of bathing young

females, who were later revealed to be Lewis's underage family members.  [*Id.* at

219-20.]  To search the laptop, FE Rollins used a forensic preview tool known as

OS Triage.  [*Id.* at 216-18.]  OS Triage produced a report identifying files that had

been previously opened on the laptop and the accompanying file names.  [*Id.* at

217-21; R. 33:  Exhibit and Witness List at 149; Gov't Exhibits A & B, Sealed

Appx at 13-34.[1]]  Detective Gatson examined the file names, which were

consistent with common child sex exploitation series, including, among other

things: "Tara" and "PedoMom."  [R. 35:  W. Anthony Gatson, TR (Motion

Hearing) at 202-04, 217-18; Gov't Exhibit B, Sealed Appx at 31-34.]  Neither FE

Rollins nor Detective Gatson opened any files or observed the contents of the files.

[R. 35:  W. Anthony Gatson, TR (Motion Hearing) at 219-20.]

    At some point during this consensual interaction, Lewis also told the officers

that "he didn't know it was illegal to look at child sexual exploitation, he thought it

was only illegal to save it and that he did not know that he committed a crime."

[*Id.* at 235, 240.]  Officers were also aware that Lewis was a convicted sex

---

[1] Although these exhibits were not sealed, the district court ordered the
government to "ensure that the contents of the[ exhibits] remain confidential."
[R. 66:  Order at 517.]

offender.  [*See id.* at 246; R. 35:  Brian Minnick, TR (Motion Hearing) at 266;

R. 60:  Presentence Report ¶ 44.]

Based primarily on the file names discovered on Lewis's laptop and the

statements he made about looking at child sexual exploitation materials, Detective

Gatson called an Assistant Commonwealth Attorney.  [R. 35:  W. Anthony Gatson,

TR (Motion Hearing) at 221, 240.]  The attorney advised him "[t]o arrest Mr.

Lewis and to obtain a search warrant for the residence."  [*Id.* at 221.]  After the

call, Detective Gatson placed Lewis under arrest, read him his rights, which Lewis

invoked, and a uniformed KSP officer transported him to jail.  [*Id.* at 221-23.]

Although Lewis never revoked his consent to search his devices, Detective Gatson

informed him that he intended to obtain a search warrant.  [*Id.* at 214, 224-25.]

Special Agents Minnick and Even further corroborated Detective Gatson's

testimony, stating that Lewis consented to the search of his devices and never

revoked that consent.  [R. 35: Brian Minnick, TR (Motion Hearing) at 259-63;

R. 35:  Brandon Even, TR (Motion Hearing) at 266-71.]

After placing Lewis under arrest, Detective Gatson prepared a search

warrant application, which he presented to a Franklin County District Court judge.

[R. 35:  W. Anthony Gatson, TR (Motion Hearing) at 225.]  In the affidavit,

Detective Gatson detailed his considerable experience investigating child sexual

exploitation crimes and included boilerplate language concerning such

4

investigations.  [R. 24:  Motion at 104.]  He then presented the following

information from his investigation, with the caveat that his affidavit "set[s] forth

only the facts that [he] believe[s] are necessary to establish probable cause":

> An HSI investigation identified Edward L. Lewis . . . as a person of
> interest.  HSI SA Minnick requested assistance with interviewing Mr.
> Lewis.  Mr. Lewis was located at his residence at 147 Meredith
> Avenue . . . .  Mr. Lewis gave consent to search his laptop and cell
> phone.  During [sic] search it became apparent that Mr. Lewis had
> used his laptop to view images of child sexual exploitation.  The
> search based on consent was stopped and Mr. Lewis was arrested.
>
> Based on the affiant's knowledge, experience and training, Edward L.
> Lewis has demonstrated a pattern of criminal activity related to child
> pornography, and there is a reasonable likelihood that the user treats
> child pornography as a valuable commodity to be retained and
> collected, a character common to many people interested in child
> pornography.

[*Id.* at 105.]  Based on this information, the judge issued the warrant, which KSP

and HSI officers executed immediately thereafter, seizing multiple electronic

devices to conduct further forensic examinations, which further revealed child

sexual exploitation materials on Lewis's laptop, cell phone, and two other devices

also located at the residence.  [R. 35:  W. Anthony Gatson, TR (Motion Hearing) at

225; R. 46: Plea Agreement at 361 (¶ 3(b)).]  Among these materials, officers

located videos of two minor females that Lewis surreptitiously recorded via "spy

cameras" that he had hidden in the bathrooms and one bedroom of two different

residences that he owned, but where "his 'cousin's' family was visiting or residing." [R. 46: Plea Agreement at 361 (¶ 3(b)).]

A federal grand jury indicted Lewis on five counts related to the production of child pornography (Counts 1 through 5), one count for the receipt of child pornography (Count 6), and one count for possession of child pornography (Count 7). [R. 19: Superseding Indictment at 62-65.] Lewis moved to suppress the evidence, asserting that the search warrant affidavit failed to establish probable cause, or, in the alternative, contained misrepresentations and material omissions, requiring a *Franks* hearing. [R. 24: Motion at 82.] The United States disagreed, arguing that the search warrant established probable cause, or, at the least, that Detective Gatson relied on it in good faith, that Lewis was not entitled to a *Franks* hearing, and, alternatively, that Lewis consented to the search. [R. 26: Response at 129.]

After an evidentiary hearing, the magistrate judge issued a report and recommendation to deny Lewis's motion to suppress because he consented to a complete search of his electronic devices, which also permitted the seizure of his property, and "absent withdrawal, revocation, or limitation" of that consent, "law enforcement did not exceed the scope of Mr. Lewis'[s] consent." [R. 34: Report and Recommendation at 184, 191-95.] "Having established that Mr. Lewis consented to the search, the Court [declined to] address whether the search warrant

6

lacked probable cause and, in turn, whether a good-faith exception applied to the warrant."  [*Id.* at 195-96.]

Lewis filed objections to the report and recommendation, arguing that he gave only "limited consent for a preview of his laptop and his cellphone," that he "revoked his consent" or was "alternatively . . . prevented . . . from revoking his consent" by having been removed from the scene, that he "never consented to the second search of his devices," and that he "never consented to a seizure of his property."  [R. 36:  Objections at 285, 293, 296, 298.]  Again, the United States disagreed, arguing that Lewis broadly consented to the search, he did not revoke his consent, and his express consent to seizure was not required because officers had probable cause to believe they contained contraband.  [R. 39:  Response at 313-20.]  Both parties also reiterated their probable cause and good faith arguments.

After conducting a de novo review, the district court declined to adopt the magistrate judge's recommended disposition.  [R. 42:  Opinion and Order at 337.] Specifically, the district court found that Lewis's "consent to search did not permit the seizure of his electronic items."  [*Id.* at 340-41.]  "[B]ecause Mr. Lewis's items were not seized by consent," the district court overruled Lewis's remaining objections as moot, declining to "analyze the scope of Mr. Lewis's initial consent to search because, regardless of its scope, the legality of the fruits of seizure

requires an independent analysis focused on the validity of the warrant granted to Detective Gatson." [*Id.* at 342.] The court then concluded that, although the search warrant affidavit failed to establish probable cause, "the good faith exception to the exclusionary rule precludes suppression." [*Id.* at 344-45.] In reaching this conclusion, the court held that Lewis failed to establish (1) that Detective Gatson "knew, or was reckless in not knowing, [that the affidavit] contained false information or a material omission," (2) that the state judge improperly acted as a "rubber stamp" for police activities, (3) that the affidavit was so "bare bones" that an objectively reasonable officer would not rely on it, or (4) that the warrant is so facially deficient that it could not reasonably be presumed valid. [*Id.* at 346-51.]

Lewis entered a conditional guilty plea to a single count of production of child pornography, "reserv[ing] the right to appeal the District Court's denial of his pretrial motion to suppress," and the United States agreed to dismiss the remaining counts at sentencing. [R. 46: Plea Agreement at 359 (¶ 1); R. 45: Minute Entry at 358.] The district court sentenced him to a mandatory, minimum sentence of 300 months of imprisonment. [R. 53: Judgment at 396; R. 63: Court, TR (Sentencing) at 505.] This appeal followed. [R. 54: Notice of Appeal at 403 (creating case no. 22-5593); R. 58: Supplemental Notice of Appeal at 416 (creating case no. 22-5800).]

8

## SUMMARY OF THE ARGUMENT

As a threshold matter, this Court may uphold the suppression ruling on any ground supported by the record.  Here, the government established by a preponderance of the evidence that Lewis broadly consented to a complete search of his laptop and cell phone and that Lewis never retracted nor withdrew this consent.  Further, under the plain view doctrine, officers were entitled to seize these devices after finding immediately incriminating files during the preview search.  Accordingly, any evidence pertaining to child pornography located on these devices was lawfully obtained during a consensual search and should not be suppressed.

Alternatively, this Court can affirm the ruling below because the district court correctly concluded that a reasonable officer could have relied on the warrant in good faith.  The supporting affidavit contained no false information or material omissions capable of misleading the state court judge to issue the warrant.  There is no evidence that the issuing judge abdicated his role as a neutral and detached magistrate.  And the warrant affidavit is not so bare bones as to render official belief in its existence entirely unreasonable.  Additionally, there is no evidence of police misconduct, and suppression of this evidence would not serve the exclusionary rule's purpose.

## ARGUMENT

### I.    Lewis consented to a complete search of his electronic devices and never revoked that consent.

"It is well settled that a person may waive his Fourth Amendment rights by consenting to a search." *United States v. Carter*, 378 F. 3d 584, 587 (6th Cir. 2004) (en banc).  "Consent to search only vitiates the warrant requirement if consent was voluntarily given." *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010).  "Generally, whether consent to a search was voluntarily given is a question of fact."  *Id.*  "It is the Government's burden by a preponderance of the evidence, to show through 'clear and positive' testimony that valid consent was obtained."  *Id.*  "When determining whether consent was voluntarily given, the reviewing court is to examine the totality of the circumstances involved."  *Id*. (citing *Schneckloth v. Bustamente*, 412 U.S. 218, 226 (1973)).  Even where an individual has provided voluntary and unequivocal consent, he may retract or limit that consent at any time.  *United States v. Buckingham*, 433 F.3d 508, 512 (6th Cir. 2006) (citing *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999)).

At the evidentiary hearing, all three witnesses testified that Detective Gatson told Lewis that the purpose of the knock-and-talk was to investigate an HSI lead related to child sex exploitation.  [R. 35:  W. Anthony Gatson, TR (Motion Hearing) at 209, 211; R. 35:  Brian Minnick, TR (Motion Hearing) at 259-63;

10

R. 35:  Brandon Even, TR (Motion Hearing) at 266-69.]  Lewis then invited the officers into his home, moved about his home freely, and remained conversational, amiable, and cooperative throughout the entire encounter.  [R. 35:  W. Anthony Gatson, TR (Motion Hearing) at 209, 211-215, 230; R. 35:  Brian Minnick, TR (Motion Hearing) at 259-63; R. 35:  Brandon Even, TR (Motion Hearing) at 266-71.]  Ultimately, Lewis executed a standard Kentucky State Police Consent to Search form permitting a complete search of his cell phone and laptop computer.  [R. 26:  Response at 141.]  Specifically, the consent form permitted a "*complete search of the premises . . . located at 147 Meredith Ave, Frankfort, KY 40601 and more particularly described as Samsung Galaxy Note 9 and HP Pavilion Laptop Model # 3165NGW S/N 5CD62235P.*"  [*Id.*]

The magistrate judge found that these facts established that "Lewis knowingly, intelligently, and unequivocally gave consent to search."  [R. 34: Report and Recommendation at 191.]  He further found that Lewis, knowing the object of the investigation, broadly consented to a "complete search" of his electronic devices, as indicated by the consent form, and that the record was devoid of any evidence that Lewis "withdrew or attempted to withdraw his consent."  [*Id.* at 193-95.]  Finally, the magistrate judge found that the breadth of Lewis's consent extended to the seizure of his electronic devices.  [*Id.* at 192, 195.]

11

The district court declined to adopt the report and recommendation, finding that Lewis's "consent to search did not permit the seizure of his electronic items." [R. 42: Opinion and Order at 340.] Further, because the electronic devices "were not seized by consent," the district court declined to "analyze the scope of Mr. Lewis's initial consent to search because, regardless of its scope, the legality of the fruits of seizure requires an independent analysis focused on the validity of the warrant." [*Id.* at 342.]

This Court reviews the district court's legal conclusion de novo, *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017), and it "may uphold the denial of [a] motion to suppress on any ground supported by the record." *United States v. Galaviz*, 645 F.3d 347, 354 (6th Cir. 2011). Here, the district court erroneously held that, absent Lewis's express consent to search and seize, officers had no authority to seize the devices without a warrant. But this holding ignores the plain view doctrine.

This Court has repeatedly applied the plain view doctrine to consensual searches. *See United States v. Tatman*, 397 F. App'x 152, 175 (6th Cir. 2010) (collecting cases). "Under this doctrine, law enforcement officers are permitted to seize evidence without a warrant if the evidence is '(1) in plain view; (2) of a character that is immediately incriminating; (3) viewed by an officer lawfully located in a place from where the object can be seen; and (4) seized by an officer

who had a lawful right of access.'"  *Id.*  Lewis does not dispute that he invited the officers into his home and, at the very least, consented to a forensic preview of his laptop and cellphone.  He also does not dispute the results of that preview contained within the OS Triage Report.  Many of the file names in the report are self-explanatory and others were identified by Detective Gatson as being consistent with child exploitation materials.  In other words, these files were "immediately incriminating," warranting no further investigation prior to seizing the devices, regardless of Lewis's consent.  *See Tatman*, 397 F. App'x at 175.

This is especially true, where, as here, the officers also had probable cause to associate the files with criminal activity.  *Id.* ("Under the plain view doctrine, an item seized cannot satisfy the immediately incriminating requirement unless the officer who discovers and seizes the item has probable cause to associate the item with criminal activity.").  Indeed, Lewis admits that, during his consensual encounter with officers, he told officers "that he had been on the Dark Web" and viewed child exploitation materials, but that "he didn't know it was illegal to look at child sexual exploitation, he thought it was only illegal to save it and that he did not know that he committed a crime."  [R. 46:  Plea Agreement at 360 (¶ 3(a)); R. 35:  W. Anthony Gatson, TR (Motion Hearing) at 235, 240.]  Detective Gatson was also aware that Lewis was a convicted sex offender and indicated as much in the search warrant affidavit.  [*See id.* at 246; R. 24:  Motion at 105 (referring to

13

Lewis's "pattern of criminal activity related to child pornography"); R. 35: Brian Minnick, TR (Motion Hearing) at 262; R. 60: Presentence Report ¶ 44.] And Lewis's registered IP address linked him to child sexual exploitation materials. [R. 35: W. Anthony Gatson, TR (Motion Hearing) at 206-07.] These facts, taken in conjunction with the file names, easily meet the probable cause standard.

Nor is there any reason to believe that Lewis's consent was limited to a mere preview of his electronic devices. In the consent form, Lewis expressly states that he is consenting to a "complete search" of his laptop and cell phone. Additionally, Lewis was well-aware of the object of the search—to find evidence of child exploitation. *United States v. Garrido-Santana*, 360 F.3d 565, 576 (6th Cir. 2004) ("Generally, the expressed object of the search defines the scope of that search."). Under these circumstances, a reasonable person would have understood that the consent to a "complete search" would include methods beyond a mere preview of electronic devices. This conclusion is further supported by the fact that, although he could have revoked, withdrawn, or limited his consent at any time, Lewis chose not to do so. Detective Gatson even recalled Lewis having a conversation with FE Rollins about "where he was looking on the computer" and whether he was "looking through the cache," and still, Lewis did not limit the scope of his consent. [R. 35: W. Anthony Gatson, TR (Motion Hearing) at 230.]

14

Lewis also did not withdraw his consent at the time of his arrest, despite invoking his *Miranda* rights.  As the magistrate judge explained, "an arrest does not result in an automatic withdraw[al] of consent."  [R. 34: Report and Recommendation at 194.]  *United States v. Mitchell*, 82 F.3d 146, 150-51 (7th Cir. 1996) ("[T]he fact that [the defendant] formally was placed under arrest sometime after the first consent does not work as an automatic withdrawal of the consent previously given."); *see also United States v. Mendez*, 431 F.3d 420, 427 (5th Cir. 2005) (adopting Seventh Circuit rule that individual being placed under arrest does not result in automatic revocation of consent).  Nor does Lewis's desire to preserve his rights under *Miranda* suggest a similar desire to withdraw, revoke, or limit the prior consent.  The exercise of rights under *Miranda* regarding the Fifth Amendment are different and distinct from the exercise of rights regarding searches involving the Fourth Amendment.  And absent an unequivocal act or statement of withdrawal by Lewis, the officers had no reason to believe his consent had been revoked under the circumstances.  *See United States v. Jimenez*, 446 F. App'x 771, 777 (6th Cir. 2011) (holding where defendant "never acted as if or stated unequivocally that he wanted to withdraw his consent," district court correctly concluded that consent had not been withdrawn); *United States v. Jimenez*, No. 1:08-CR-101, 2009 WL 2905933, at *5 (E.D. Tenn. Sept. 2, 2009) ("[T]he law generally requires an unequivocal act or statement of withdrawal, and

15

a consent to search is not terminated merely by a worsening of the consenting party's position.") (quoting 4 Wayne R. LaFave, Search and Seizure § 8.1 (4th ed. 2004 & Supp. 2008-09))).

Likewise, Lewis's removal from the scene did not prevent him from withdrawing his consent. When Lewis exercised his *Miranda* rights and refused to talk to the officers, he also could have withdrawn his consent to search, but he did not do so. Similarly, he could have advised the transport officer that he was withdrawing his consent. This officer was not at the scene when consent was obtained and able to relay any withdrawal of the consent.

Lastly, because Lewis never withdrew his consent to search his laptop and cell phone, officers had legal authority to continue to review the contents of these items without seeking a warrant or additional consent. As Detective Gatson explained, a full search of Lewis's electronic devices required more sensitive equipment and could not be completed at the scene. [R. 35: W. Athony Gatson, TR (Motion Hearing) at 243.] So, he contacted a state prosecutor, who advised him to "arrest Mr. Lewis and to obtain a warrant for *the residence*," which he did. [*Id.* at 221 (emphasis added).] But the fact that Detective Gatson, acting out of an abundance of caution, interrupted the consensual search of the electronic devices and sought broader authority via a warrant for the entire residence and all electronic devices therein, does not render the further forensic examination of

16

Lewis's laptop and cell phone unauthorized and invalid. Nor does it suggest that Detective Gatson abandoned the consensual search. Afterall, the object of the search was not yet complete, further forensic examination was necessary to identify all of the child sexual exploitation materials on Lewis's devices, the officers had not relinquished custody and control of the items, Lewis gave no indication that his consent had been withdrawn, and the subsequent search was conducted within a reasonable time.

Consequently, any evidence pertaining to child pornography located on either Lewis's laptop or cell phone was lawfully obtained pursuant to Lewis's voluntary consent to a complete search, and the evidence should not be suppressed.

## II.  Alternatively, the district court correctly applied the good faith doctrine.

"The Fourth Amendment prohibits judges from issuing search warrants unless the requesting officer demonstrates probable cause." *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018) (citing U.S. Const. amend. IV). "A police officer has probable cause to conduct a search when the facts available to [the officer] would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (cleaned up).

"[E]ven if the police execute a search warrant based on something less than

probable cause, evidence acquired as a result of that search is not necessarily

excludable at trial." *United States v. Novak*, 814 F. App'x 1009, 1012-13 (6th Cir.

2020). Rather, under the "good faith" doctrine, such evidence is excludable only

> (1) when the affidavit supporting the search warrant contains
> a knowing or reckless falsity; (2) when the magistrate who issued the
> search warrant wholly abandoned his or her judicial role; (3) when the
> affidavit is so lacking in indicia of probable cause that a belief in its
> existence is objectively unreasonable; or (4) when the warrant is so
> facially deficient that it cannot reasonably be presumed valid.

*Id.* at 1012. "This broad exception to the exclusionary rule exists because 'the

judge issuing a warrant—not the officer applying for one—has responsibility for

determining whether probable cause exists.'" *Id.* (quoting *United States v. McCoy*,

905 F.3d 409, 416 (6th Cir. 2018)). "There is therefore 'little deterrent effect' to

applying the exclusionary rule to law-enforcement officers who merely applied for

a warrant in good faith, and who otherwise behaved in an 'objectively reasonable'

manner." *Id.*; *see also United States v. Christian*, 925 F.3d 305, 312-13 (6th Cir.

2019) (en banc) (emphasizing breadth of exception).

Afterall, the purpose of suppression is to deter police misconduct. *United*

*States v. Leon*, 468 U.S. 897, 916 (1984). "[T]he deterrence benefits of exclusion

'var[y] with the culpability of the law enforcement conduct' at issue." *Davis v.*

*United States*, 564 U.S. 229, 238 (2011) (quoting *Herring v. United States*, 555

U.S. 135, 143 (2009)).  "Only when law enforcement officials operate in 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights' will the 'heavy toll' of suppression 'pay its way.'"  *White*, 874 F.3d at 497 (quoting *Herring*, 555 U.S. at 144).

Here, a state court judge issued the warrant based on the fact that (1) Detective Gatson had considerable experience and training investigating child sexual exploitation crimes; (2) the state statute defined child exploitation matter (Ky. Rev. Stat. 531.300); (3) HSI "identified [Lewis] as a person of interest"; (4) during an interview at his residence, "Lewis gave consent to search his laptop and cellphone"; (5)  "[d]uring [the] search it became apparent that Mr. Lewis had used his laptop to view images of child sexual exploitation"; (5) "[t]he search based on consent was stopped and Mr. Lewis was arrested"; and (6)  "Lewis has demonstrated a pattern of criminal activity related to child pornography."  [R. 24: Motion at 104-05.]

Although the district court focused on only a few of the facts[2] and found the information insufficient to establish probable cause, it ruled that "the good faith

---

[2] To the extent the district court found that "Detective Gatson provided the state judge only one fact in support of the existence of probable cause: that a search of Mr. Lewis's laptop and cell phone had occurred," it clearly erred by ignoring several other facts contained within the affidavit and detailed above.  [R. 42: Opinion and Order at 344.]  Indeed, the court later identifies some of these facts, including Detective Gatson's experience, which in conjunction with the search,

exception to the exclusionary rule precludes suppression" because (1) Detective Gatson included no deliberately false information or material omission in his warrant affidavit that "misled" the state court judge, (2) Lewis presented no evidence that the state court judge improperly acted as a mere "rubber stamp," (3) the affidavit was not "bare bones" such that no reasonably objective officer could rely on it, and (4) the warrant is not so facially deficient that it could not reasonably be presumed valid.  [R. 42:  Opinion and Order at 345-51.]

In the motion-to-suppress context, this Court reviews the district court's factual findings for clear error and its legal conclusions de novo.  *White*, 874 F.3d at 495.  "[This Court] review[s] all evidence in a light most favorable to the Government," *United States v. Gilbert*, 952 F.3d 759, 762 (6th Cir. 2020), and in a light "most likely to support the decision of the district court."  *United States v. Abernathy*, 843 F.3d 243, 250 (6th Cir. 2016).  Additionally, "[t]o determine whether a reasonable officer would rely on a judicially authorized warrant, a reviewing court must read the affidavit reasonably.  That means a court must read it holistically, examining the totality of the circumstances and employing a healthy

---

caused him to believe that Lewis "used his laptop to view images of child sexual exploitation." [*Id.* at 343-45, 347, 350.]  The court determined that these facts were sufficient to satisfy the good-faith exception and because this appeal can be resolved on those grounds alone, this Court need not reach the issue of probable cause.  *See Galaviz*, 645 F.3d at 354 ("[This Court] may uphold the denial of [a] motion to suppress on any ground supported by the record.").

dose of common sense." *White*, 874 F.3d at 502. "If an inference is obvious from the factual context, a reviewing court should indulge it." *Id.*

Regardless of whether the affidavit established probable cause, the district court correctly ruled that the good-faith doctrine precludes suppression where, as here, the warrant falls outside the four, narrow situations enumerated by *Leon*. Lewis disagrees, arguing that (1) Detective Gatson intentionally and strategically omitted information from his affidavit to mislead the issuing judge, (2) if not misled, the issuing judge "abdicated his role as a neutral magistrate," and (3) the affidavit is "bare bones" such that no reasonable officer could objectively rely on it. *See* Lewis's Brief at 12-15 & n.5 (conceding that warrant is not so facially deficient to preclude officer's reasonable reliance on it and abandoning his reliance on fourth *Leon* exception). Because these arguments find no support in the record, they should be rejected.

> A.    *The affidavit contained no false information or misleading omissions.*

First, as the district court explained, Lewis fails to identify any false information in Detective Gatson's affidavit and, rather than mislead the issuing judge, the omissions he identifies would have only strengthened the probable cause showing and made it more likely that a warrant would issue. [*See* R. 42: Opinion and Order at 346-48.] For example, Lewis complains that Detective Gatson

omitted the fact that HSI identified him as a person of interest only after learning that an IP address linked to child sexual exploitation in 2019 was registered to two addresses associated with Lewis.  *See* Lewis's Brief at 16-17.  "[This Court] ha[s] repeatedly held that visiting or subscribing to a website containing child pornography creates a reasonable inference that the user has stored child pornography on their computer."  *Tagg*, 886 F.3d at 586; *id.* at 587 ("[W]e have held that a nexus exists when law enforcement connects the IP address used to access a website to the physical location identified by the warrant.").  And contrary to Lewis's assertion, the dated nature of this information does not undermine that inference.  As Detective Gatson explained in his affidavit, individuals accessing child sexual exploitation materials "typically retain these materials for many years, and they rarely destroy these materials unless their activities are uncovered by law enforcement or others."  [R. 24:  Motion at 104.]  Accordingly, the fact that Lewis's IP address linked him to child sexual exploitation in 2019 only strengthens the probable cause showing.

Lewis also complains that Detective Gatson failed to advise the issuing judge that "the preview search only revealed file names and not actual images."  Lewis's Brief at 17.  But as the district court explained, "there is no evidence in the record that the failure to provide this information rendered the state judge 'misled' so as to preclude the application of good faith."  [R. 42:  Opinion and Order at

22

347.]  Indeed, Detective Gatson stated in his affidavit that he has considerable experience and training in investigating child sexual exploitation crimes, including conducting "on-site computer previews, the identification and seizure of digital evidence, . . . [and] familiar[ity] with the techniques used by individuals who collect images of child pornography, including the terminology used to name associated files."  [R. 24:  Motion at 104.]  He further testified that he immediately recognized many of the file names on the laptop as common child sexual exploitation series.  [R. 35:  W. Anthony Gatson, TR (Motion Hearing) at 217-18; Gov't Exhibit B, Sealed Appx at 31-34.]  In fact, many of the file names found on Lewis's laptop speak for themselves, and if included in the affidavit, easily support the reasonable inference that "Lewis had used his laptop to view images of child sexual exploitation."  [*See* R. 24:  Motion at 105; Gov't Exhibit B, Sealed Appx at 31-34.]

Still, Lewis complains that the district court "place[d] an added burden" on him by requiring a showing that the omission of these facts "rendered the state judge 'misled.'"  Lewis's Brief at 16.  But *Leon*'s holding is clear:  "Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."  468 U.S. at 923.  Lewis concedes as much, noting that *Leon*'s first enumerated exception

applies only "when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information."  Lewis's Brief at 15 (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). Because Lewis cannot make such a showing here, the good faith doctrine applies.

Lewis further argues that "Detective Gatson's decision to limit what he put in his affidavit" was "deliberate" and "strategic" and intended to "keep[] aspects of investigations confidential longer" or "eliminate or at least limit effective cross examination."  Lewis's Brief at 18.  Nothing in the record supports Lewis's rank speculation about Detective Gatson's motives. Lewis's theory also defies common sense because including the IP address information and the file names in the warrant affidavit would have strengthened the warrant.  Moreover, the affidavit itself explains the omission of this information.  Detective Gatson, writing with "the limited purpose of securing a Search Warrant," "set forth only the facts that [he] believe[s] are necessary to establish probable cause that evidence, fruits and instrumentalities of [child sexual exploitation crimes] are present."  [R. 24: Motion at 105.]  The issuing judge agreed that the facts in the affidavit were sufficient.  Now, with the benefit of hindsight, it is easy to argue that Detective Gatson should have provided more information, but that does not preclude a finding of good faith.

24

Detective Gatson's failure to have a state prosecutor review his affidavit also does not negate good faith, and Lewis fails to cite any case law to the contrary. *See* Lewis's Brief at 18-19. As Detective Gatson explained, he conferred with the state prosecutor, who told him to "arrest Mr. Lewis and to obtain a search warrant for the residence." [R. 35: W. Anthony Gatson, TR (Motion Hearing) at 221.] Detective Gatson then "used the same language" in the search warrant that he used with the state prosecutor. [*Id.* at 221-22.] Having just made a probable cause arrest based on the same facts, Detective Gatson understandably did not find it necessary to have the state prosecutor review his affidavit a mere two hours later. Maybe doing so would have garnered a different result, but such a showing is not necessary to apply the good faith doctrine.

Put simply, there is no evidence in the record to suggest that Detective Gatson knew or should have known that the facts contained in the affidavit fell below probable cause, much less that he intended to mislead the issuing judge—especially when the inclusion of any or all of those facts would have strengthened the probable cause showing. Accordingly, the first enumerated example in *Leon* does not apply.

> **B.      *There is no evidence that the issuing judge abdicated his role.***

Lewis next relies on *Leon*'s second exception, arguing that "if the issuing judge was not misled, then he abdicated his role as a neutral magistrate and acted

as a rubber stamp for police activities." Lewis's Brief at 19. The district court, finding no evidence of improper conduct by the issuing judge, rejected this argument. [R. 42: Opinion and Order at 348-49.]

Lewis complains that the district court held him to "an unnecessary burden of proof, requiring him to prove malfeasance by the issuing judge." Lewis's Brief at 20. But this Court has long held that "[t]he defendant carries the burden of proving that the issuing magistrate acted as a rubber stamp." *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005) (citing *United States v. Rodriguez-Suazo*, 346 F.3d 637, 649 (6th Cir. 2003)). And where "[t]here is no evidence to suggest that [an issuing judge] was somehow involved in the 'competitive enterprise of ferreting out crime,' or that he was blindly and automatically approving the warrant," this Court has held that the exception does not apply. *United States v. Chaar*, 137 F.3d 359, 364-65 (6th Cir. 1998) (internal citation omitted).

During the evidentiary hearing, Lewis could have questioned Detective Gatson about the judge's process in issuing the warrant to draw out facts to support this argument. But he did not do so. And in the absence of such evidence, the district court correctly rejected Lewis's argument.

C.    *The affidavit is not bare bones and official reliance on it is reasonable.*

In reality, Lewis's argument concerning the issuing judge's alleged impropriety is based on his belief that the affidavit is bare bones, and thus meets *Leon*'s third exception.  Lewis's Brief at 23 (arguing that "it should have been obvious that there was no factual basis supporting a probable cause determination").  Under this exception, suppression remains an appropriate remedy "when the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  *White*, 874 F.3d at 496 (quoting *Leon*, 468 U.S. at 923).

An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a "bare bones" affidavit.  *Id.*  Courts consider an affidavit "bare bones" if it is "conclusory" and "asserts only the affiant's belief that probable cause existed," thereby "provid[ing] nothing more than a mere guess that contraband or evidence of a crime would be found."  *Id.*  On the other hand, an affidavit fits within the good-faith exception if it "contains a minimally sufficient nexus between the illegal activity and the place to be searched."  *Id.* at 496-97.  "If the reviewing court is 'able to identify in the averring officer's affidavit some connection, regardless of how remote it may have been'—'some modicum of evidence, however slight'—'between the criminal

27

activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable." *Id.* at 497 (quoting *Laughton*, 409 F.3d at 749-50). This standard is lower than probable cause and requires only "reasonable grounds for believing that the warrant was properly issued." *Id.* at 498; *see United States v. Reed*, 993 F.3d 441, 451 (6th Cir. 2021) ("There obviously must be daylight between" "sufficien[cy] for probable cause . . . [and] sufficien[cy] for *Leon* . . . because *Leon*'s exception applies only when an affidavit falls short of probable cause.").

Here, the district court found that, although the affidavit fell short of establishing probable cause, it "cannot be deemed 'bare bones' as to preclude an application of good faith." [R. 42: Opinion and Order at 350.] Because "Detective Gatson describes his lofty experience in law enforcement, explains that Mr. Lewis's laptop was searched at his home address, and indicates that 'it became apparent' that Mr. Lewis had engaged with child sexual exploitative material," there is "'some modicum of evidence, however slight' that evidence of criminal activity was present on Mr. Lewis's electronic devices." [*Id.* at 350 (quoting *White*, 874 F.3d at 497).]

Lewis disagrees, arguing that the lack of "some description of what [Detective Gatson] observed during the preview of [Lewis's] electronic devices" renders "conclusory" his statement that "it was apparent that [Lewis] had viewed

28

child pornography on his laptop." Lewis's Brief at 24. But this ignores several other facts provided in the affidavit related to Detective Gatson's experience conducting "on-site computer previews, the identification and seizure of digital evidence, . . . [and] [his] familiar[ity] with the techniques used by individuals who collect images of child pornography, including the terminology used to name associated files," as well as his inclusion of the state statute's elaborate definition of child exploitation matter (Ky. Rev. Stat. 531.300). [R. 24: Motion at 104-05.] Based on these facts, the issuing judge could reasonably consider the statement of an experienced investigator that the search of Lewis's laptop revealed evidence of child exploitation matter. *See United States v. Gatherum*, 338 F. App'x 271, 276-77 (4th Cir. 2009) ("[E]ven if the absence of a detailed description of the conduct pictured in the relevant images rendered the affidavit deficient, the officers relied in good faith on the warrant issued by the magistrate, and the district court therefore properly denied Gatherum's suppression motion"); *United States v. Smith*, 795 F.2d 841, 848 (9th Cir. 1986) ("As to the affidavit's 'conclusory' statement that the photographs depicted 'sexually explicit conduct,' we do not find the character of the allegation fatal to the warrant. Although more specific descriptions of the photographs would have been desirable, we note that the affidavit specifically refers to violation of section 2251, directing the magistrate to the child pornography statute and its definitions. These definitions are quite

specific, and the magistrate reasonably considered the statement of an experienced postal inspector that the photos depicted 'sexually explicit conduct' within the statute." (citation and footnote omitted)).

The district court also failed to address other facts that further support a finding of reasonable reliance on the warrant.  As explained above, a state court judge issued the warrant based on (1) Detective Gatson's considerable experience and training investigating child sexual exploitation crimes; (2) the state statute defining child exploitation matter (Ky. Rev. Stat. 531.300); (3) the fact that HSI "identified [Lewis] as a person of interest"; (4) that, during an interview at his residence, "Lewis gave consent to search his laptop and cellphone"; (5) that "[d]uring [the] search it became apparent that Mr. Lewis had used his laptop to view images of child sexual exploitation"; (5) that "[t]he search based on consent was stopped and Mr. Lewis was arrested"; and (6) that "Lewis has demonstrated a pattern of criminal activity related to child pornography."  [R. 24:  Motion at 104-05.]

Even if these facts fall short of probable cause, they provide "reasonable grounds for believing that the warrant was properly issued," rendering suppression an inappropriate remedy.  *White*, 874 F.3d at 498.  Indeed, as the Supreme Court and this Court has repeatedly explained, "the exclusionary rule generally should not apply when officers obtain a warrant from a neutral judge."  *Reed*, 993 F.3d at

30

450 (citing *Leon*, 468 U.S. at 922-23).  "When a judge issues a warrant, the judge has made the independent decision that probable cause exists for the search."  *Id.* (citing *Leon*, 468 U.S. at 921).  "Because most police officers are not lawyers, they may be expected to defer to the judge's legal conclusion in that regard."  *Id.*  "So if it later turns out that probable cause did not exist, the judge will typically be the blameworthy party, not the officer who relied on the judge's legal mistake."  *Id.* (citing *Davis*, 564 U.S. at 239).  "And the officer's objective reliance on the judge's probable-cause opinion does not show the type of 'flagrancy' required for the exclusionary rule's benefits to outweigh its costs."  *Id.* (quoting *Leon*, 468 U.S. at 911).

Here, Detective Gatson set forth only those facts he believed necessary to establish probable cause.  Certainly, he would have included more if the judge had inquired further or told him that his evidence fell short.  But the fact remains that the state court judge agreed that the facts were sufficient and issued the warrant. And while a more detailed description of the facts may have been helpful, Detective Gatson relied in good faith on the warrant issued.

Under such circumstances, the policies underlying the exclusionary rule counsel against suppression.  The primary purpose of the exclusionary rule is to deter police misconduct.  *Leon*, 468 U.S. at 916.  "[W]hen an officer secures a judicial warrant before conducting a search, as [the officer] did in this case,

31

'penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *White*, 874 F.3d at 505-06. "[T]he deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue." *Davis*, 564 U.S. at 238. Where, as here, there is no evidence of police misconduct and official reliance on the warrant is reasonable, suppression is not warranted. *See White*, 874 F.3d at 497 ("Only when law enforcement officials operate in 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights' will the 'heavy toll' of suppression 'pay its way.'") (quoting *Herring*, 555 U.S. at 144).

Indeed, suppression under the facts of this case is tantamount to punishing the public for the magistrate's mistake, not the officer's misconduct. Particularly so where, as here, the officer had obtained Lewis's full consent to search the electronic devices, and upon finding considerable evidence of criminal activity, contacted a prosecutor and took the more cautious approach of arresting Lewis, apprising him of his *Miranda* rights, and seeking a search warrant.

## CONCLUSION

This Court should affirm the district court's suppression ruling.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

CHARLES P. WISDOM JR.
CHIEF, APPELLATE DIVISION

By:    s/ Lauren Tanner Bradley
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
(859) 685-4876
Lauren.Bradley@usdoj.gov

33

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  According to a computer count, the principal brief contains 7,651 words.

s/ Lauren Tanner Bradley
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

On January 20, 2023, I electronically filed this brief through the ECF system, which will send the notice of docket activity to:

David J. Guarnieri
*Attorney for Edward Leonidas Lewis*

s/ Lauren Tanner Bradley
Assistant United States Attorney

## APPELLEE'S DESIGNATION OF DISTRICT COURT DOCUMENTS

| Record Entry | Description of Document | Page ID# |
|:---:|:---|:---|
| 19 | Superseding Indictment | 62-69 |
| 24 | Motion | 82-127 |
| 26 | Response | 129-41 |
| 33 | Exhibit and Witness List | 149-83 |
| 34 | Report and Recommendation | 184-96 |
| 35 | Motion Hearing Transcript | 197-283 |
| 36 | Objections | 284-302 |
| 39 | Response | 311-26 |
| 42 | Opinion and Order | 335-52 |
| 45 | Minute Entry | 358 |
| 46 | Plea Agreement | 359-67 |
| 53 | Judgment | 395-402 |
| 54 | Notice of Appeal | 403 |
| 58 | Supplemental Notice of Appeal | 416-17 |
| 60 | Presentence Report | — |
| 63 | Sentencing Transcript | 485-512 |
| 66 | Order | 517-18 |