No. 22-5593
No. 22-5800

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

*FILED ELECTRONICALLY*

EDWARD LEWIS            )
                        )
   Appellant            )
                        )
                        )
v.                      )
                        )
UNITED STATES OF AMERICA )
                        )
   Appellee             )

On Appeal From The United States District Court
Eastern District of Kentucky, Central Division at Frankfort
Action No. 3:21-cr-021-GFVT-1

---

### REPLY BRIEF OF APPELLANT

---

                          Respectfully submitted,

                          McBRAYER PLLC
                          201 East Main Street, Suite 900
                          Lexington, KY  40507
                          (859) 231-8780
                          dguarnieri@mcbrayerfirm.com

                          */s/ David J. Guarnieri*
                          DAVID J. GUARNIERI
                          ATTORNEY OF APPELLANT

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES...........................................................................ii

INTRODUCTION..........................................................................................1

ARGUMENT .................................................................................................1

I.     Lewis Did Not Consent to The Seizure and Offsite Search Of His Devices, Nor Was There A Separate Basis To Seize Them As Contraband..............1

    A. *Mr. Lewis consented to an onsite preview only and did not authorize seizure*............................................................................................2

    B. *Neither the cell phone nor the laptop constituted contraband, and therefore, they were not subject to seizure despite being in plain sight*....................9

II.    The Warrant Cannot Be Saved by Good Faith......................................11

CONCLUSION............................................................................................13

FRAP 32(a) CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

**Cases**

*Florida v. Jimeno*, 500 U.S. 248, 251 (1991)..................................................2

*United States v. Asgari*, 918 F.3d 509, 512 (6th Cir. 2019)...........................10

*United States v. Baptiste*, 388 Fed. Appx. 876, 881 (11th Cir. 2010)..................4

*United States v. Cannon*, No. 10-50108-001, 2011 WL 2600682 (W.D. Ark. May 19, 2011)................................................................................................6-7

*United States v. Stallworth*, No. 3:18-CR-11-MCR, 2018 WL 11309913 at *4 (N.D. Fla. Apr. 26, 2018)..............................................................................6

*United States v. Stapleton*, No. 12-11-ART-(1), 2013 U.S. Dist. LEXIS 106667 (E.D. Ky. July 30, 2013)................................................................................2

*United States v. Strickland*, 902 F.2d 937, 941 (11th Cir. 1990)........................5

*United States v. Wald*, 216 F.3d 1222, 1228 (10th Cir. 2000)...........................2

*United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017)............................2,9

*United States v. Zapata*, 180 F.3d 1237, 1242 (11th Cir. 1999)........................4

**Statutes**

18 U.S.C. § 2253.........................................................................................7

## INTRODUCTION

Appellee sets forth two separately numbered arguments under the Statement of the Issues at p. 1 of its brief, yet it seemingly raises three arguments in the body of its brief. Specifically, the issues identified in Appellee's Statement of the Issues are 1) whether the Motion to Suppress should have been denied because Appellant consented to a complete search of his laptop and cell phone, and 2) whether the district court was within its discretion to deny the Motion under the good faith exception. Yet, in the body of its brief, after discussing the findings of the magistrate and the district judge, Appellee first argues that the district judge's holding ignored the plain view doctrine (Appellee Brief, p. 12), before pivoting back to its argument that there is not "any reason to believe that Lewis's consent was limited to a mere preview of his electronic devices." (Appellee Brief, p. 14). As demonstrated below, the Appellee's arguments regarding consent, plain view and good faith are unavailing and do not support upholding the district court's decision.

## ARGUMENT

**I.　LEWIS DID NOT CONSENT TO THE SEIZURE AND OFFSITE SEARCH OF HIS DEVICES, NOR WAS THERE A SEPARATE BASIS TO SEIZE THEM AS CONTRABAND.**

In its first argument, the Appellee bounces back and forth between its contention that Lewis consented to a complete search of his electronic devices, which it contends without any factual or legal support extended to a seizure and offsite search, and its contention that once lawfully inside Lewis's residence, officers observed contraband in plain sight making it subject to seizure. The appellee is wrong on both counts, and by its second argument, raises issues that were not developed before the district court.

1

A. *Mr. Lewis consented to an onsite preview only and did not authorize seizure.*

"The test for measuring the scope of consent is one of objective reasonableness: '[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?'" *United States v. Wald*, 216 F.3d 1222, 1228 (10th Cir. 2000) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). "The scope of consent to a search or seizure turns on the 'totality of the surrounding circumstances,' not any one fact such as a consent form." *United States v. Stapleton*, No. 12-11-ART-(1), 2013 U.S. Dist. LEXIS 106667 (E.D. Ky. July 30, 2013). The testimony of the Government's witnesses clearly establishes that Mr. Lewis consented only to an onsite preview of the items specifically identified in the Consent Form, *i.e.*, the laptop and cellphone. Accordingly, the district court correctly found that Mr. Lewis did not consent to a seizure, and subsequent forensic search, of his electronic devices and Appellee's argument to the contrary should be rejected.[1]

In support of its argument that Mr. Lewis's consent was absolute and unlimited, Appellee relies on the part of the officers' testimony indicating that Lewis was advised of the nature of the investigation, that he invited the officers into his home, that he was free to move about, that the conversation was cordial, that Mr. Lewis was cooperative, and that he eventually signed a Kentucky State Police Consent to Search form. (Appellee's Brief, pp. 10-11). While these excerpts bare on the question of voluntariness, they are impertinent to the question of scope, and notably absent from Appellee's brief is any discussion of the testimony describing

---

[1] In its brief, Appellee frames the district court's findings regarding the scope of Mr. Lewis's consent as a legal conclusion, subject to *de novo* review. Appellant believes this is a factual finding, subject to abuse of discretion. *See United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017).

2

the specific interaction between Lewis and Det. Gatson wherein consent was asked for and given.

According to SA's Minnick and Even, Det. Gatson handled the consent issues with Mr. Lewis. [RE 35, Page ID# 256, 273]. Det. Gatson, who acknowledged taking the lead in obtaining consent, testified that he "asked [Lewis] if he would mind if someone ***came over and looked at the – his devices.*** [Lewis] said that would be fine. He signed a consent to search." [RE 35, Page ID# 209] (emphasis added). After obtaining Mr. Lewis's consent, Det. Gatson went outside and "called the office and asked for one of [KSP's] forensic examiners to drive to the house and to ***preview the items that Mr. Lewis had gave consent to do so***." [RE 35, Page ID# 209-10] (emphasis added). Det. Gatson's testimony makes clear his belief that Lewis gave consent to search only the cell phone and laptop, and that the intent was for both to be viewed onsite, not taken offsite. Specifically, he testified as follows:

> Q. Okay. Your expectation, based on your interaction with Mr. Lewis that day, was he was giving consent for a forensic examiner to come out and preview devices?
>
> A. Right. My – yes, sir.
>
> Q. Whether it was limited to two devices or any devices, you're less certain of?
>
> A. Yes, sir.
>
> Q. It wasn't just a general consent to come out and look around; right?
>
> A. I think that's fair, sure. Yes, sir.

[RE 35, Page ID# 239-40]. Similarly, SA Even's testimony supports the conclusion that the consent was limited in scope:

> Q. Well, tell us how Detective Gatson inquired into obtaining his consent.
>
> A. Upon entry or consent for the computers?
>
> Q. Yes, for the computers.

3

A. He explained why – why we were there and what he had. I remember Detective Gatson had a bunch of paperwork with him and he was going through some paperwork with him, explaining what – what had brought us to his house and asked if he – if he would object if we looked at his electronic devices.

Q. And what was Mr. Lewis's response?

A. He didn't – he didn't object to it at all. He said there's nothing – you're not going to find anything on there, something along those lines.

[RE 35, Page ID# 269].

SA Minnick, who also observed the interaction between Det. Gatson and Mr. Lewis, testified that Det. Gatson asked Mr. Lewis

> if he'd be willing to talk with us. He did. Asked him for consent to search some media. I can't remember exactly what it was, what type of device, whether it was a laptop, cellphone, or whatever it was. He agreed. And then a forensic examiner looked over the device or the electronic data, or whatever it was, and discovered that there was evidence of child exploitation material.

[RE 35, Page ID# 260]. Considering their testimony together, a typical and reasonable interpretation of the scope of Mr. Lewis's consent was confined to an onsite preview of his laptop and cellphone. "A search may be unreasonable, even when an individual consents to that search, 'when an officer does not conform to the limitations imposed by the person giving consent.'" *United States v. Baptiste*, 388 Fed. Appx. 876, 881 (11th Cir. 2010) (quoting *United States v. Zapata*, 180 F.3d 1237, 1242 (11th Cir. 1999)).

Det. Gatson's decision to not only apply for a search warrant, but also to request express permission to seize and later search Mr. Lewis's property, is additional proof that Mr. Lewis's consent to search was limited to an onsite preview.

Specifically, Det. Gatson confirmed that he wrote the following in his application for a search warrant:

> This affiant also knows that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons. Searching computer systems is a highly technical process, which requires specific expertise and specialized equipment.
>
> There are so many types of computer hardware and software in use today that it is impossible to bring to a search site all of the necessary and technical manuals and specialized equipment necessary to conduct a thorough search.
>
> In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system being searched.

[RE 35, Page ID# 242-43]. Det. Gatson then admitted that part of his rationale for securing a search warrant was to do a more sophisticated search of the devices that was needed to recover the actual files that he believed contained images and videos depicting child exploitation. Specifically, Det. Gatson testified as follows:

> Q. That's part of why you reached out – was it Mr. Becker you reached out to, Zack Becker, the assistant Commonwealth Attorney?
>
> A. I think so, yes sir.
>
> Q. Part of why you reached out to Mr. Becker is knowing that what you and Forensic Examiner Rollins could do on site was limited, wasn't it?
>
> A. Yes, sir, it's a preview. It's not considered a search or a full search, that's correct, yes, sir.
>
> Q. And to get whether it's the carve material, the cache, the thing that you and I don't know much about, but Forensic Examiner Rollins does, it's your understanding you probably needed more sensitive equipment; right?
>
> A. Yes, sir.

[RE 35, Page ID# 243]. There was no testimony provided at the suppression hearing by witnesses to the exchange between Lewis and Det. Gatson that Lewis's initial consent included a seizure of his property and subsequent technical search utilizing specialized equipment at an outside location.

Under the totality of the circumstances, it is clear Det. Gatson believed he had reached the bounds of Mr. Lewis's consent no later than the time he contacted the Commonwealth's Attorney's office to seek advice on how to proceed after the preview of Mr. Lewis's devices by FE Rollins concluded. Det. Gatson made an audio recording of his interaction with Mr. Lewis following his conversation with the prosecutor wherein he informed Mr. Lewis that he was terminating the consensual search: "You gave consent to have your electronic devices ***looked at in the house*** which we had somebody in the office do that. We're going to stop that and get a search warrant to follow up." [RE 35, Page ID# 223, Government's Exhibit D]. Det. Gatson's statement shows he understood Mr. Lewis's prior consent was not broad enough to include any future search beyond an onsite preview of his devices; rather, Det. Gatson either completed, or decided to abandon, the search authorized by Mr. Lewis's consent, and he informed Mr. Lewis of his intention to obtain a search warrant to conduct the type of specialized search he details in his affidavit and that was ultimately performed.

Commonsense dictates that law enforcement officers who had received a general consent to enter and search a home would not bother to ask for a warrant as the search continued. *See United States v. Stallworth,* No. 3:18-CR-11-MCR, 2018 WL 11309913 at *4 (N.D. Fla. Apr. 26, 2018). When an officer concludes that a search warrant is required for a continued search, courts have found the consensual search to be completed at the time of the officer's departure. *See United States v. Cannon,* No. 10-50108-001, 2011 WL 2600682 (W.D. Ark. May 19, 2011), report and recommendation adopted, No. 10-50108, 2011 WL 2600660 (W.D. Ark. June

30, 2011). Det. Gatson acknowledges in his affidavit accompanying his application for the search warrant that "[t]he search based on consent was stopped and Mr. Lewis was arrested." [RE 35, Page ID# 241, Defense Exhibit 1]. A reasonable interpretation of Det. Gatson's conduct in stopping the consensual search and arresting Mr. Lewis, and of Det. Gatson's written statements to the local judge when applying for the search warrant, is that the full scope of Mr. Lewis's consent included only an onsite preview of his laptop and cellphone, and nothing more.

The Appellee's reliance on consent is misplaced and not a basis to affirm the district court's denial of Lewis's Motion to Suppress. Because Lewis's consent was clearly limited in this instance, the district court's conclusions were not erroneous and certainly do not constitute an abuse of discretion, and due to page limits imposed by FRAP 28, Lewis does not address the issue of whether he revoked his consent here, but that issue was fully briefed below.

B. *Neither the cell phone nor the laptop constituted contraband, and therefore, they were not subject to seizure despite being in plain sight.*

As an initial matter, Appellee did not make a plain sight argument in its written response to the motion to suppress or at the suppression hearing, instead raising it for the first time in its written Response to Lewis's Objections to the Magistrate's Report and Recommendation. [RE. 39, Response in Opposition to Defendant's Objections to Magistrate's Report and Recommendation, ID # 319-320]. At that time, the Appellee's argument centered on the forfeiture provisions of 18 U.S.C. § 2253, which applies post-conviction, and subjects to forfeiture not only visual depictions constituting child sexual exploitation as defined in that chapter, but also any property used to commit the commission of an offense under that chapter. While the images may immediately be apparent as criminal, the electronic devices are not. Accordingly, the officers were not asked, and there is no testimony in the

record, supporting the Appellee's position that the incriminating nature of the devices they seized was immediately apparent to them.

In fact, to the extent the record is developed on this issue, the evidence is to the contrary. Det. Gatson testified that he did not view files or images during the preview search, only file names. [RE 35, Page ID # 219]. When asked whether the cell phone was previewed at that same time as the laptop, Det. Gatson testified that FE Rollins showed him thumbnails of what were later determined to be family members that were videoed in the home. [RE 35, Page ID # 219].[2] As to his discovery of file names, Det. Gatson conceded that file names are not necessarily indicative of file content. In fact, he offered several examples in his experience where the file names were misleading and not accompanied by an actual image or video depicting child sexual exploitation. [RE 35, ID #234]. As indicated in his search warrant affidavit, it became apparent to Det. Gatson that the laptop was used to view images of child sexual exploitation, but not necessarily that the laptop contained such images. Testimony indicated that Mr. Lewis denied saving any images on his laptop [RE. 35, ID # 240], and until it was subjected to a sophisticated, forensic search, neither Det. Gatson nor FE Rollins knew whether it contained any child sexual exploitation material.

---

[2] In its written Response to the Motion to Suppress, the government made three telling statements that are counter to the argument it now makes: 1) It indicated that the Defendant stated, when asked if there were any images of child sexual exploitation on his cell phone, that there were some images of teenagers but that they were all "of age" or were "18 years old." 2) It indicated that FE Rollins performed a scroll analysis of the cellphone and he observed multiple sites that the Defendants had accessed, one of which was: "Loliwood Studies: Child Erotica at its Best." And, 3) it indicated that FE Rollins observed questionable search terms and some videos in thumbnail form, but he did not play those videos. [RE 26-1, ID # 133].

Under the Appellee's view of the world, anytime law enforcement gets a credible tip that an IP address has been on a target website or an individual has been surfing the dark web on his or her computer, their computer or phone is subject to a probable cause seizure anytime it is in plain sight. Not only is this not the law, but it endangers fundamental right to privacy, and to be secure from unlawful searches and seizures.

## II.    THE WARRANT CANNOT BE SAVED BY GOOD FAITH

Lewis asserts three challenges to the district court's application of *Leon* to save the warrant that it rather emphatically determined was issued without probable cause. He contends *Leon* does not apply here because 1) the absence of probable cause is the result of deliberate police conduct that can and should be deterred, 2) the fact that the warrant issued here, given the affidavit's patent deficiencies, leads to but one of only two possible conclusions—that the reviewing judge was misled or acted as a rubber stamp, and 3) that a warrant issued pursuant to a bare bones affidavit is *per se* unreasonable and cannot be saved by good-faith. Appellee's response to the first two arguments, and the district court's decision regarding those issues, is premised on the erroneous, and overly broad legal proposition that if a defendant does not establish malfeasance by the officer, the reviewing judge, or both, then *Leon* always applies even in the face of unreasonable police slipups. Appellee's response to the third argument, and the district court's decision regarding that issue, is premised on the erroneous factual determination that the affidavit was not bare bones.

In *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) another panel of this Court explained that "[t]here must be daylight between the 'bare-bones' and 'substantial basis' standards if Leon's good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the

criminal justice system's truth-seeking function." Likewise, it cannot only be in circumstances of intentional misconduct by an officer or a reviewing judge for exclusion to apply if Leon's good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function.

By asserting/concluding that Lewis had to demonstrate that Det. Gatson intentionally misled the judge, or produce affirmative evidence demonstrating why, rather than that, the reviewing judge was either misled or was derelict in his duty, Appellee's brief and the decision of the district court goes too far and distorts *Leon's* purpose of balancing personal versus public interests. Under their blanket rule, the probable cause requirement would only have meaning in the rare instances where there is affirmative proof of malfeasance, rather than misfeasance or even nonfeasance, by the officer or reviewing judge. This is unfounded. In *United States v. Asgari*, 918 F.3d 509, 512 (6th Cir. 2019) this Court explained that exclusion is not always the remedy because "[h]iccups sometimes occur in complex as well as run-of-the-mine criminal investigations. The investigators may think probable cause exists, but a court may later disagree. To prevent reasonable errors from leading to disproportionally severe consequences, the Supreme Court in *United States v Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L.Ed. 2d 677 (1984), created a 'good faith' exception to the exclusionary rule, a safe harbor for reasonable slipups." *Id.* This Court then went on to explain that two exceptions exist to the good-faith rule, one of which is in the case of a bare bones affidavit and the other is in the instance of intentional or reckless falsehoods within the application. Accordingly, because the exception is not available in the context of a bare bones affidavit, Lewis will address that argument first.

As noted at p. 28 of Appellee's brief, the district court concluded that although the affidavit fell short of probable cause, it cannot be deemed "bare bones" so as

10

preclude application of good faith. The district court reached its conclusion based on the affidavit's description of Det. Gatson's lofty experience coupled with the fact that Lewis's laptop was searched at his home address leading Det. Gatson to conclude that Lewis had engaged with child sexual exploitative material. [RE 42; Opinion and Order, ID # 350]. Appellee's brief alludes to additional or supplemental facts, not relied on by the district court, such as that Det. Gatson's lofty experience specifically included prior onsite computer previews involving the identification and seizure of digital evidence, his familiarity with techniques used by individuals who collect images of child pornography, including terminology used to name associated files, and his citation to a state criminal statute covering the suspected conduct.

All these facts, the two relied on by the district court, and the others alluded to by Appellee, are set out in the affidavit. But, absent at least one additional fact, as opposed to a mere conclusion, tying suspected criminal activity to the place to be searched, they are impertinent. At most, these additional facts bolster the officer's conclusion that evidence of a crime may be found in the place to be search, but they do nothing to verify or corroborate any factual assertion explaining why evidence of a crime may be found in the place to be searched. Therefore, they cannot save the search as this is merely cumulative evidence establishing that the officer, through his affidavit, usurped the reviewing judge's inference drawing authority. Under the district' court's reasoning, and the position advanced by Appellee, experience of the officer, and the fact of some investigation, are enough for a warrant to be issued so long as there is a conclusory statement from the officer that evidence of a crime may be found at the place to be searched.

Even if the affidavit was more than bare bones, exclusion is still appropriate here as Det. Gatson's affidavit contains the explicit admission that he was setting forth only the facts that he believed were necessary to establish probable cause. To the extent there was more Det. Gatson could have, yet chose not to put in his

affidavit, his and the conduct of other law enforcement officers who subsequently may choose to take this same minimal approach can in fact be deterred by exclusion. Therefore, suppression does meet the objectives of deterring police conduct.

Rather than explain why that is not the case, Appellee responds solely by characterizing as "rank speculation" Lewis's ascribed motives to why Det. Gatson chose to limit what he put in the affidavit. Appellee misses the point. Det. Gatson's decision was intentional, and therefore, can be deterred in the future. Whether it was nefarious is of no account, as the absence of bad-faith is not the equivalent of good-faith in the context of *Leon*. Moreso, the Appellee's argument that the inclusion of more information would only have strengthened the affidavit both misses the point and makes the case for exclusion at the same time. That is, if warrants shall only be issued upon the existence of probable cause, officers seeking them should be encouraged to ensure they do all they can, or at least that which is reasonable, to establish probable cause before securing a warrant to invade someone's home or seize their property. There should be consequences when officers obtain a warrant without doing so, particularly when they intentionally choose to withhold information in the process.

Similarly, Det. Gatson's decision not to consult with the same state court prosecutor who he discussed the initial preview with when applying for the search warrant is also the type of questionable decision making that can [and should] be deterred in the future.

Appellee also fails to address the commonsense proposition that the reviewing judge was misled or acted as a rubber stamp. Instead, Appellee argues that Lewis could have inquired into the judge's review process when questioning Det. Gatson. However, the record on the review process, or lack thereof, speaks for itself and needs no further elucidation. Specifically, the affidavit was applied for at 3:18 pm,

12

and while there is not a time stamp indicating when the warrant was issued, the Evidence/Recovered Property receipts indicate items were seized pursuant to the warrant at approximately 4:20 pm, barely an hour later. Moreso, the allegations set out in the affidavit that purportedly supported probable cause speak for themselves. Glaringly, like the concession it made when punting on the question of probable cause at the suppression hearing, characterizing the warrant as being "is what it is," [RE 35, Transcript, ID # 276], the government offers no support for probable cause in its brief. And, just as Appellee cannot credibly allege the affidavit supports a probable cause determination, it cannot overcome the logical conclusion one draws from the fact that a warrant was issued despite the affidavit being so skimpy, and so conclusory, which is that no reasonable person, including the reviewing judge, would have signed the warrant unless he was misled or acting as a rubber stamp.

## CONCLUSION

For the reasons herein and in his principal brief, Appellant, Edward Lewis, respectfully requests this Court issue an Opinion reversing the district court's decision denying his Motion to Suppress.

Respectfully submitted,

McBrayer PLLC
201 E. Main Street, Suite 900
Lexington, KY 40507
(859) 231-8780
dguarnieri@mcbrayerfirm.com

*/s/ David J. Guarnieri*
David J. Guarnieri | KY Bar 86522
*Attorney for Appellant*

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
## Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. I hereby certify that this reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 4047 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. I further certify that this reply brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this reply brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ David J. Guarnieri*
DAVID J. GUARNIERI

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of February, 2023 a true and correct copy of the foregoing was served via electronically with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

CHARLES P. WISDOM JR.
LAUREN TANNER BRADLEY
ASSISTANT UNITED STATES ATTORNEY
260 W. VINE STREET, SUITE 300
LEXINGTON, KENTUCKY 40507-1612
(859) 685-4876

*/s/ David J. Guarnieri*
DAVID J. GUARNIERI

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RE | Document | Date | Page |
|---|---|---|---|
| 26-1 | Memorandum of Law in Support of Response to Motion to Suppress | 12/06/2021 | 129-141 |
| 35 | Transcript of Suppression Hearing | 01/17/2022 | 197-283 |
| 39 | Response in Opposition to Objections to Report and Recommendation | 02/08/2022 | 311-326 |
| 42 | Memorandum Opinion & Order | 03/16/2022 | 335-367 |